UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RANDAL S. HORR, | ) |
| | ) |
|      Petitioner, | ) |
| | ) |
| v. | ) Civil No. 7-147-B-W |
| | ) |
| STATE OF MAINE, | ) |
| | ) |
|      Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Randal Horr is serving an eleven-year sentence after he was convicted of a cluster of motor vehicle offenses including a habitual offender charge. Horr's defense to the pivotal charge was that he was not the operator of the vehicle on the night of his arrest and that the true driver, Danny Libby, had fled the scene. Horr filed a 28 U.S.C. § 2254 petition in September 2007 presenting four ineffective assistance of counsel claims and the proceeding was stayed while Horr's second petition for state post-conviction review was pending. After the Maine Law Court denied Horr's petition for a certificate of probable cause apropos that second collateral relief effort, the stay was lifted. Horr then filed an amended § 2254 petition which added two new grounds, one relating to the denial of a motion for a new trial and one pertaining to the failure to deduct pretrial detention time from his sentence. The State of Maine has filed a motion to dismiss and Horr has filed a lengthy brief in support of his claims. I recommend that the Court deny Horr 28 U.S.C. § 2254 relief.

**Discussion**

The Maine Supreme Court describes the events leading to Horr's arrest for the convictions he now contests as follows:

In November of 2001, Horr was residing with his sister in Windham. His sister owned a 1992 Buick LeSabre, and she had a Ford Thunderbird parked on her lawn, which she had agreed to sell on behalf of a friend. In the early morning hours of November 19, 2001, Horr removed a license plate from his sister's LeSabre and attached it to the Thunderbird. He drove that vehicle to Portland. He was intoxicated, and his license had been suspended for being a habitual offender. A motorist, whose vehicle Horr nearly struck, called the Portland Police and described the vehicle.

A police officer followed the car Horr was operating into an apartment complex parking lot where he found Horr standing outside the passenger door pointing to the apartment building. Horr claimed that an individual named Danny Libby had run inside the building, but no Danny Libby could be located, and Horr was arrested and charged, in a five-count indictment, with being an habitual motor vehicle offender (Count I); operating under the influence (Count II); driving to endanger (Count III); theft by unauthorized use of property (Count IV); and attaching false motor vehicle plates (Count V).

State v. Horr, 2003 ME 110, ¶¶ 2-3, 831 A.2d 407, 409.  One key concern for Horr throughout the state court proceedings and now in this federal venue is the admission of "Exhibit 1" into evidence which was a notice of revocation of his motor vehicle license and whether or not the jury was inadvertently given detailed attachments as part of that exhibit that the parties had worked out would be for the court's eyes only.

***Standard for 28 U.S.C. § 2254 Review of State Court Determinations***

"This case is governed by the standards of review established by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, and the well-established Strickland test for ineffective assistance of counsel claims. Strickland v. Washington, 466 U.S. 668, 687 (1984)."  Sleeper v. Spencer, 510 F.3d 32, 37(1st Cir. 2007).  "Under AEDPA":

> if a state court has adjudicated a habeas petitioner's claim on the merits, a federal court may issue the writ only if the state court's adjudication resulted in a decision that "was contrary to" clearly established federal law, involved an "unreasonable application" of clearly established federal law, or was based on an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C § 2254(d).

2

A state court's decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite from that reached by the U.S. Supreme Court on a question of law, or if the state court decides the case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision unreasonably applies clearly established federal law if the state court correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply. L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir.2002) (citing Williams, 529 U.S. at 407). If the state court does not expressly apply the federal standard but resolves the issue under a state law standard that is more favorable to defendants than the federal standard, then the reviewing court "will presume the federal law adjudication to be subsumed within the state law adjudication." Teti v. Bender, 507 F.3d 50, 54-55 (1st Cir.2007) (quoting McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir.2002)). To be unreasonable, the state court's application of existing legal principles must be more than merely erroneous or incorrect. Williams, 529 U.S. at 411. "We agree with the Second Circuit that 'some increment of incorrectness beyond error is required.' Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000). The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." McCambridge, 303 F.3d at 36.

In reviewing a habeas corpus petition under AEDPA, a federal court will presume that the state court's findings of fact are correct. For this purpose, the term "facts" refers to "basic, primary, or historical facts," such as witness credibility and recitals of external events. Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.2001) (quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir.1999)). The habeas petitioner may defeat the presumption of correctness only with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); see also Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir.2002). The presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the findings of fact. Norton v. Spencer, 351 F.3d 1, 6 (1st Cir.2003) (quoting Sumner v. Mata, 455 U.S. 591, 593 (1982)).

Id. at 37-38.  See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005); Mello v. DiPaulo, 295 F.3d 137, 142-43 (1st Cir. 2002); Vieux v. Pepe, 184 F.3d 59, 63-64 (1st Cir. 1999).[1]

### 28 U.S.C. § 2254 Claims

**1.**    ***Exposure of Jury to Horr's Driving Record***

In his first 28 U.S.C. § 2254 claim Horr asserts that his defense attorney and the state courts violated his right to a fair trial by allowing the disclosure of prejudicial information and records to the jury.  This ground involves the Exhibit 1 issue mentioned above.   Horr explains that his trial attorney moved to exclude reference to any prior convictions to the jury, the State agreed, and the trial court ruled that no detailed records on the priors would be admitted into evidence as part of the jury proceedings. (Sec. 2254 Br. at 29.)   There was an agreement that the habitual offender count would be decided by the Court.  (Id.)  Horr complains that the indictment was read to the jury and so the members of the jury panel learned that he had been charged as a habitual offender.  (Id. at 30.)  He points to testimony by certain witnesses regarding his suspended license and the admission of State Exhibit 1, without objection.  (Id.)  He further submits that his entire Department of Motor Vehicle records were presented to the jury, without objection by defense counsel.  (Id.  at 30-31.)

Horr raised the question of whether or not the jury was exposed to the full scope of his motor vehicle infraction record in his direct appeal to the Maine Law Court. Appellate counsel argued that in addition to the certification page, the jury had a notice of revocation listing three OUIs and two Operating after Suspension offenses; a Bureau of Motor Vehicles Review with five pages of violations, including nine OUI convictions; and Horr's State Bureau of Identification report listing fifteen further charged offenses.

---

[1]       The State of Maine is not asserting that these claims were not fully exhausted as required by 28 U.S.C. § 2254(b).

(Appellant Brief. at 5, State App. B.)  The Law Court found that the factual record did not support Horr's assertion that Exhibit 1 was submitted to the jury with his full record attached.  The Law Court concluded:

> The record does not support Horr's contention that the details of Horr's unusually lengthy criminal and motor vehicle history were attached to Exhibit # 1, the Notice of Revocation, when it went to the jury room. Horr's attorney was asked to check the exhibits before they were given to the jury prior to the commencement of deliberations, and the attorney made no objection to what went to the jury as Exhibit # 1. If the totality of Horr's driving record were attached to Exhibit # 1, it is reasonable to assume that Horr's attorney would have strenuously objected to those attachments going to the jury. The record reflects that the attorney for the State held the attachments that were removed from Exhibit # 1 before Exhibit # 1 was submitted to the jury. Because Horr's contention that the jury had information on his motor vehicle and criminal history is not supported in the record, he has failed to demonstrate any error in the procedure used.

State v. Horr, 2003 ME 110, ¶ 7, 831 A.2d 407, 410 (emphasis added).

The transcript of the trial reveals that the trial judge indicated to the jury before it entered deliberations that he was going to have the attorneys double check the exhibits "to make sure we have them all and not too many." (July 23, 2003, Trial Tr. at 163.)  Right before the jurors left the courtroom the Court asked:  "Will counsel check the exhibits?" (Id. at 165.)  The prosecutor responded:  "Yes, Your Honor."  (Id.)  There was no response by defense counsel.  The jury deliberated for just about one half hour.  (Id. at 165.)

Although not highlighted by the Maine Law Court,  immediately following the return of the verdict, the trial transcript includes the following response by the prosecutor on the question of whether the State had additional evidence for consideration by the court on Counts I and II:

> PROSECUTOR:  The State has the attachments that were taken apart from
> Exhibit No. 1, the certification with regard to his prior driving history
> which corresponds to –
> THE COURT:  I assume that's in the jury room.
> THE PROSECUTOR: Yeah, that's what I am looking for, but that did
> come with the certification, so that's his self-authenticating document
> indicating the ten prior OUI's that are listed in the indictment, if that's
> really an issue.
> THE COURT:  Do you have anything else to offer on the issue… do you
> have any other evidence to offer on the issue?
> THE PROSECUTOR:  I do have a second page here.  This has to do with
> the notice that was sent to him, that's all I have.

(July 23, 2003, Trial Tr. at 168-69.)   Although not crystal clear to a reader, this exchange

can be read to support the conclusion that the prosecutor had the attachments when the

jury exhibits were still in the jury room and that the court was making an assumption only

that the notification page was in the jury room.

    With regards to Horr's ineffective assistance overlay on this issue, vis-à-vis Horr's

first petition for state post-conviction relief there was plenty of testimony at the post-

conviction hearing by both Horr's trial and appellate attorneys on this question of whether or

not the jury was exposed to Horr's full criminal and driving records.  (Nov. 29, 2004, Post-

conviction Tr. at 113, 159-63.)  Horr's appellate attorney testified how she discovered this

exhibit with attachments of Horr's criminal record:

> So I went to the Law Court, and lo and behold when I opened the file, they
> had listed as NJ, and jury exhibits, nonjury exhibit as Jury Exhibit One
> was not only the papers from the Secretary of State notifying you that you
> are under suspension, and the second page that lists the three things that
> make you [a] habitual offender, but on there was a driving record and a
> criminal record, so I went back and reread the transcript, and I noticed that
> there was talk at the end, at the end of trial during sentencing, and I don't
> have this in front of me, but something to the effect of the prosecutor
> saying, I can't find, I can't find these records of his prior driving and
> criminal history, and somebody said, well I guess they went in with the
> jury.

(Nov. 29, 2004, Post-conviction Tr. at 113.)

6

The post-conviction justice, who presided over Horr's trial, refused to allow inquiry into whether or not trial counsel actually looked at Exhibit 1 prior to it going to the jury, the court sustaining two objections by the assistant district attorney.  When post-conviction counsel asked Horr's trial counsel whether he actually remembered examining Exhibit 1, the ADA objected as follows:

> Your Honor, I would object, that's not relevant to the proceeding that's before the court today.  The issue before the court is whether – or one of the issues that's been brought up is whether the suspension notice itself should have gone to the jury is a question of trial strategy and what the defendant, you know, wanted to do or didn't want to do.  The issue of whether or not the driving history was attached to the certification has already been addressed and aired in front of the law court and decided, and at this point in time I think the question of whether [Horr's trial attorney] actually looked at that or whether he recalls he did it it's just not relevant to anything that's before the court today.

(Id. at 163-64.)  This objection was sustained.  Horr's post-conviction counsel asked if he could state his position, and the court permitted this.  Post-conviction counsel explained:

> I am not admitting it for purposes of reinstigating the Law Court brief or argument.  You indicated to counsel to check the exhibits.  There was no record in the transcript whether this was actually done or not.  It came back, you asked was there anymore issues.  This only applies to the actual trial itself going on and the performance of counsel, and that's the only reason I am asking that question.

(Id. at 164.)  The court sustained the ADA's objection "that issue has not been brought up in the petition."  (Id. at 164-65.)  Ultimately, the superior court justice ruled:  "Petitioner's contention that improper documents showing his prior record were submitted to the jury is not substantiated by the record.   In the opinion affirming the judgment the Law Court thoroughly discussed the issue and found no error."  (Nov. 29, 2005, Decision at 5, State App. C) (citation omitted).[2]

---

[2]   Prior to trial counsel's testimony, appellate counsel took the stand in the post-conviction hearing. Horr's post-conviction counsel attempted to explore the issue of the admission of Exhibit 1 even if it were only the notice page and whether or not that was an argument that should have been made.  (Id. at 125-27.)

The post-conviction court's treatment of the ineffective assistance claims vis-à-vis trial counsel on the issues surrounding the admission of Exhibit 1 to the jury is a little baffling and the Assistant District Attorney's defensive strategy is a little troubling. At the beginning of the post-conviction hearing, there was an express agreement that the claims Horr was going forward on were those in his supplemental brief (rather than the more numerous ones set forth in his form-post-conviction petition). (Id. at 5.) At this juncture the ADA even made it clear, in arguing against sequestration of Horr's trial attorney, that trial counsel's performance "is what's at issue here." (Id. at 6.) The Maine Law Court's assumption that competent counsel would have been sure to check the exhibit when prodded by the court does not foreclose an inquiry in the context of collateral review as to the question of whether or not counsel actually fulfilled this duty. It does not take a very careful reading of Horr's supplemental petition to conclude that he is raising an ineffective assistance of counsel claim as to his trial attorney's handling of the admission of Exhibit 1 both as to the jury's exposure to his entire record and the question of trial counsel's performance in agreeing to have just the notice of revocation page admitted. (Suppl. Post-Conviction Brief at IV ¶¶ B & H, B-1-11, H-1-5, State App. C.) This supplemental brief was presented to the Maine Law

---

This was seen as a distinct issue from the issue raised on appeal, which was that the entire record went to the jury. (Id. at 126-27.) The superior court justice questioned whether or not the "issue of the certificate was raised to the Law Court" and decided. (Id. at 126-27.) After allowing some inquiry on this as a distinct issue the following exchange occurred:

> APPELLATE COUNSEL: I did not brief the specific issue of the front page of the notice from the Secretary of State, the front page Exhibit One to the Law Court, I did not segregate that though and legally address that distinct issue, and I wish I had.
> POST-CONVICTION COUNSEL: Would it be fair—maybe this is your problem I guess you thought the entire record went to the [jury].
> APPELLATE COUNSEL: I did, but when I went to see Randy Horr and spoke to him about the case he didn't tell me the whole thing went in. He was upset because the front page went.
> POST-CONVICTION COUNSEL: Let me ask you this though let[']s cut out all the rest of the page except that front page, wouldn't your same legal analysis apply?
> APPELLATE COUNSEL: No.

(Id. at 127-28.) The ADA objected to the notion that the testimony from appellate counsel could be anyway a reflection on trial counsel's performance and the post-conviction court sustained the objection. (Id. at 128-29.)

Court in addition to a brief arguing that the State of Maine should be defaulted.  Horr also thoroughly pressed this point in his appellate pleadings in response to the denial of his motion for jurors' names. (See State App. H.)

That said, with regards to the state court's determination that the Exhibit 1 submitted to the jury consisted of only the notice of revocation page, and not the attachments later stapled to it on transfer to the Maine Law Court, I must  "presume that the state court's findings of fact are correct. For this purpose, the term 'facts' refers to 'basic, primary, or historical facts,' such as witness credibility and recitals of external events." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (citing Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.2001), quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir.1999)). As Norton v. Spencer stressed:

> A "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593(1982).

351 F.3d at 6.  In this 28 U.S.C. § 2254 proceeding Horr does not rebut this finding of fact with clear and convincing evidence, see 28 U.S.C. § 2254(e)(2), he simply relies on argument and a hope that this court will draw a different inference from the exchanges at trial over the admission of Exhibit 1.[3]

Accordingly, because the finding of fact by the Maine Law Court that only the notice of revocation went with the jury into deliberations stands, there is no viability for Horr on this score either in terms of trial error or counsel's representation under

---

[3]    I realize that this is an onerous burden to place on Horr in view of his incarceration.  Given the fact that the post-conviction court restricted questioning of his counsel on whether or not he did assure that the attachments did not make their way into the jury room, one option left to Horr was to obtain an affidavit from his counsel on this issue.

<u>Strickland</u>.  As to any claim predicated on the admission of the notice only, this argument is patently without merit given the charges that Horr faced and the prosecution's right to generate the evidence necessary to support those charges.  In any case Horr has not made a convincing case per the <u>Strickland</u> standard for how this evidence could have been excluded from the jury given the contours of his case.

> **2.       *Inconsistent Testimony***

Horr's second 28 U.S.C. § 2254 ground is that his defense attorney and the state courts violated his right to a fair trial by allowing testimony at trial by Officer Porter that was inconsistent with Porter's testimony at the motion to suppress hearing  apropos the time-frame of Officer Porter's arrival in the parking lot where he encountered Horr.  (Sec. 2254 Br. at 31-32.)  Horr points out that trial counsel testified during the post-conviction hearing that he realized there was an inconsistency here but he thought that it was more helpful to Horr not to bring it up at trial.  (<u>Id.</u> at 33.)  Horr believes that Officer Porter's trial testimony represented that Porter was earlier on the scene than did Porter's testimony at the motion to suppress hearing; the trial testimony concerning Porter's arrival time did not allow for enough time for the 'real' driver of the car to exit the car and get into the apartment building before Porter arrived on the scene.  (<u>Id.</u> at 33-34.)

On this score the post-conviction court ruled:

> Trial counsel … made a tactical decision not to confront Porter about any discrepancies as to the time that had elapsed when he momentarily lost sight of the moving vehicle to the point where he found Horr outside the car.  Again, the court will not second-guess counsel['s] rational decisions made during cross-examination at the time of trial.
> The court further finds that the petitioner was adamant that he was not driving and that he wanted his trial even though counsel advised him as trial drew close that the State's evidence was strong.

(Nov. 29, 2005, Dec. at 4.)

These conclusions of fact concerning trial counsel's strategic choices and Horr's participation in the decisions about his defense strategy are unquestionably the type of factual determinations that are presumptively correct and to which this court must defer. See Sleeper, 510 F.3d at 38; Norton, 351 F.3d at 6.  The post-conviction court did not apply the Strickland "principles to the facts of the case in an objectively unreasonable manner."  L'Abbe, 311 F.3d  at 96.

3.      *Violation of Right to Due Process and Confrontation in Sentencing Proceeding*

Third, in this 28 U.S.C. § 2254 proceeding, Horr maintains that his right to due process and confrontation were violated when sentencing briefs were submitted to the court and Horr was not provided with copies.  (Sec. 2254 Br. at 35-36.)  He explains that under Maine determinate sentencing scheme the court can weigh mitigating and aggravating factors based upon information in the Presentence Investigation Report (PSI) but no such report was prepared in his case.  (Id.  at 37.)  The State presented reports that were obtained through the Maine Probation and Parole Department as well of his DMV and SBI records in support of its aggravating factor argument.  (Id. at 37-38.)  He complains that the Court did not suspend any portion of his consecutive sentences because of its determination based on these reports that Horr was a high risk.  (Id. at 38.)  Horr also forwards an argument that the Maine sentencing scheme allowing the court to make these sentencing determinations by a preponderance of an evidence standard violated his constitutional rights.  (Id. at 38-39.)  In support of this argument he cites Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296, 303 (2004).

The State responds to this ground as follows:

> With regard to Horr's third ground, the state Superior Court observed at the postconviction evidentiary hearing (page 178) that there was no presentence investigation report prepared before sentencing.

11

Accordingly, trial counsel could not have gone over its contents with Horr. Moreover, Horr vaguely asserts that non-factual information regarding his prior record was used by the State during sentencing, but Horr does not identify what facts recited by the State were inaccurate, nor did he inform the sentencing court that there were inaccuracies when he personally addressed the court. More importantly, the Maine Law Court found as fact that Horr had thirteen prior OUI convictions, thirty-six total suspensions, and prior convictions for theft, drug possession, false public alarm/report, stolen checks, disorderly intoxication, and assault. This presumptively correct finding was more than sufficient to justify the Superior Court's imposition of consecutive sentences.

(Mot. Dismiss at 9-10.)

The post-conviction court did not expressly address Horr's claim concerning the sentencing court's reliance on the above identified records and reports.  Therefore, the following passage is the state disposition of this matter:  "To the extent that the court does not discuss in this judgment any ground raised by the petitioner, it is redundant or considered by the court to be without merit and without any legal and/or factual basis."  (Post-Conviction Decision and Judgment at 2, State App. C.)   It does seem true that Horr failed to develop the factual basis for his claim in the state courts.  See 28 U.S.C. § 2254(e)(2).

However, Horr does make a legal argument predicated on Apprendi and Blakely.  In his pro se supplemental brief in support of his first petition for post-conviction relief, Horr joined the issues of the sentencing court's 17-A M.R.S. 1256(2) consecutive sentence determination, the principles of Apprendi and Blakely, and counsel's performance.  (Suppl. Post-conviction Mem. at E-1- E-9, State App. C.)  He also complained that appellate counsel failed to raise such a challenge in his direct appeal.  (Id. at  G1-G2.)  With respect to his motion for a Rule 35 discretionary appeal filed April 17, 2007, with the Maine Law Court, Horr submitted a pro se brief that challenged his sentence on these grounds.  (See State App. I.)  In this submission he challenges the constitutionality of the second and third steps of the

Maine's <u>State v. Hewey</u>, 622 A.2d 1151, 155 (Me.1993) analysis[4] and the "enhanced

consecutive sentence[s]" and he asked the Maine Law Court to remand the case with an order

that all sentences run concurrent.   In a single order the Maine Law Court summarily denied

this motion and denied Horr a certificate of probable cause on his state-post-conviction

proceeding and, in doing so, it summarized the substantive grounds raised --  including a

reference to ineffective assistance and Horr's Sixth Amendment rights  -- and determined that

no further proceeding was necessary.  In terms of counsel's performance, <u>Apprendi</u> was

issued well before Horr's trial and sentencing, not to mention his direct appeal, so it was a

case available to trial and appellate counsel.  <u>See</u>  <u>Alexandre v. State</u>, 2007 ME 106,  ¶ 6 n. 1,

927 A.2d 1155, 1158 n. 1.

  Last term the United States Supreme Court granted cert promising to review <u>State v.

Ice</u>, 170 P.3d 1049, 1056- 59 (Or. 2007), ordering:

> Petition for writ of certiorari to the Supreme Court of Oregon granted
> limited to the following question: Whether the Sixth Amendment, as
> construed in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Blakely v.
> Washington</u>, 542 U.S. 296 (2004), requires that facts (other than prior
> convictions) necessary to imposing consecutive sentences be found by the
> jury or admitted by the defendant.

<u>Oregon v. Ice</u>, 128 S.Ct. 1657 (Mar. 17, 2008).  Judging by the briefs and the transcript of the

October 14, 2008, oral argument before the United States Supreme Court, the decision on this

case will be relevant to the question of the constitutionality of Maine's consecutive sentence

statute.

  For purposes of this question the provision at issue in Horr's case is that 17-A M.R.S.

§ 1256(2)(D), permitting the court to impose sentences consecutively based on "the

seriousness of the criminal conduct involved in either a single criminal episode or in

---

[4]  I focus on the issue of the consecutive sentences here because Horr really is not making a
challenge to Maine's determinate sentencing scheme even though he references the second and third <u>State
v. Hewey</u>, 622 A.2d 1151, 155 (Me.1993) factors.  He is not pressing a <u>Cunningham v. California</u>, __
U.S.__, 127 S. Ct. 856 (2007) type challenge to any of his individual sentences.

13

multiple criminal episodes or the seriousness of the criminal record of the convicted

person, or both, require a sentence of imprisonment in excess of the maximum available

for the most serious offense." 17-A M.R.S. § 1256(2)(D).  Indeed, in sentencing Horr to

consecutive terms the Superior Court Judge made it clear that he was proceeding under this

subsection:

> There are several factors that aren't relevant here but the primary one the Court looks at is the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person or both require a sentence of imprisonment in excess of the maximum available for the most serious offense.
> In this case I do feel that consecutive sentences are warrant[ed] primarily for the protection of the community.  And for the protection of other people on the road.  And also for the punishment of the Defendant.
> Consecutive sentences are also limited to another extent where one crime facilitates the other. In analyzing the cases that we have here, there was a similar situation in the case of State versus Pineo.
> … And the Law Court has further clarified when consecutive sentences may be imposed.  Clearly here the offense of operating after revocation and habitual offender can be committed by somebody who is perfectly sober and have nothing to do with operating under the influence.
> And those, and neither operating under the influence nor habitual offense facilitate each other.
> I also find that the act of taking the vehicle was totally separate from the other two.  And that the manner in which he drove the vehicle was in a criminally negligent manner, driving to endanger was separate from the other and did not facilitate the others.
> The offense of attachment of the plates facilitated the actual taking of the vehicle.

 (Sentencing Tr. at 40 – 42.)

Horr challenged the imposition of consecutive sentences in his direct appeal.  The

Maine Law Court reasoned:

> Horr contends that his eleven-year, five-month sentence is illegal. Specifically, he argues that he should have received concurrent sentences pursuant to our decision in State v. Bunker, 436 A.2d 413, 419 (Me.1981), and the sentencing limitations found in 17-A M.R.S.A. § 1256(3)(B) & (C) (1983). The State argues that Horr did not preserve this issue by failing to raise it at the sentencing hearing or in his sentencing

memorandum, and that on the merits, the limitation provided by section 1256(3)(B) does not apply to this case.

The appropriateness of a sentence is a matter of discretionary review. See 15 M.R.S.A. §§ 2151-2157 (2003). The illegality of a sentence, however, may be raised in a direct appeal as a matter of right, so long as the illegality appears plainly in the record. State v. Ricker, 2001 ME 76, ¶ 18, 770 A.2d 1021, 1027.

In dealing with multiple sentences of imprisonment, the statute favors concurrent, as opposed to consecutive sentences. 17-A M.R.S.A. § 1256(2) (1983 & Supp.2002) ("The sentences shall be concurrent unless, in considering the following factors, the court decides to impose sentences consecutively[.]") (emphasis added). Section 1256(2), however, sets out circumstances that allow a sentencing court to order consecutive sentencing. Id. § 1256(2)(A)-(D). Subsection (2)(D) allows the court to impose consecutive sentences when:

> the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

17-A M.R.S.A. § 1256(2)(D).

Even if the circumstances would otherwise justify the imposition of consecutive sentences pursuant to section 1256(2), sections 1256(3)(A)-(D) set out circumstances when consecutive sentences may not be imposed. Id. § 1256(3)(A)-(D). Specifically, a defendant may not receive consecutive sentences for "crimes arising out of the same criminal episode" when "[o]ne crime consists only of a ... facilitation of, the other [.]" Id. § 1256(3)(B). See State v. Prentiss, 557 A.2d 619, 621 (Me.1989) ("Section 3 describes the circumstances in which consecutive sentences are prohibited."). Section 1256(3)(B) was intended "to prevent 'consecutive sentences for offenses which were committed as a part of a single course of conduct during which there was no substantial change in the nature of the criminal objective.' " Bunker, 436 A.2d at 419 (quoting Final Report of the National Commission on Reform of Federal Criminal Laws § 3204, Comment (1971)). Thus, the analysis must focus "upon the purpose for which the defendant engaged in the criminal conduct." Id. Unintentional crimes, however, have no criminal purpose and are therefore excluded from the limitation provided by section 1256(3)(B). State v. Pineo, 2002 ME 93, ¶ 13, 798 A.2d 1093, 1098-99.

The State contends that the Superior Court properly ordered Horr to serve consecutive sentences because his criminal record is so serious, and that Horr's conviction on Counts I (habitual motor vehicle offender), II (operating under the influence), and III (driving to endanger) are for unintentional crimes. Accordingly, the State argues that there was nothing to prevent the sentencing court from imposing consecutive sentences on Horr who had such a serious criminal record. We agree.

15

No culpable state of mind is required to establish the offense of operating under the influence of intoxicating liquor. State v. Poole, 568 A.2d 830, 832 (Me.1990) (observing that "[a]n OUI conviction requires no proof of mens rea"); State v. Longley, 483 A.2d 725, 732 (Me.1984) ("No culpable state of mind is required to establish the offense of operating under the influence of intoxicating liquor or drugs."). A defendant likewise does not have to intend to drive to endanger in order to be convicted of that crime; only criminal negligence must be proven. 29-A M.R.S.A. § 2413(1) ("A person commits a Class E crime, if with criminal negligence ... that person drives a motor vehicle in any place in a manner that endangers the property of another or a person ....") (emphasis added). To violate the habitual offender statute, the defendant need only operate a motor vehicle on a public way after having received proper notice of revocation. 29-A M.R.S.A. § 2557(1). No proof of a mens rea is required. Accordingly, because Counts I, II, and III involve convictions for unintentional crimes, the sentencing court acted within its discretion when it imposed consecutive sentences on those counts. See Pineo, 2002 ME 93, ¶ 13, 798 A.2d at 1098 ("As the focus on criminal purpose might suggest, all of the caselaw discussing [ section 1256(3)(B) ] has dealt with intentional crimes.").

Horr further argues that the sentence for the conviction of Count IV, theft by unauthorized use of property, was improperly made to run consecutively to the sentences imposed on Counts I, II, and III. Horr contends that the limitation provided by section 1256(3)(B) should apply to the sentence for theft, an intentional crime.

As a general principle, we have recognized that "section 1256(3)(B) should be interpreted narrowly" because it limits the otherwise wide discretion of the sentencing court to impose consecutive sentences in appropriate situations. Pineo, 2002 ME 93, ¶ 14, 798 A.2d at 1099.

Section 1256(3)(B) provides that a defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when "[o]ne crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other[.]" 17-A M.R.S.A. § 1256(3)(B).

"In order to determine whether one crime facilitated another, we properly should focus on 'the purpose for which the defendant engaged in criminal conduct.' " State v. Winchenbach, 501 A.2d 1282, 1287 (Me.1985) (quoting Bunker, 436 A.2d at 419). In Winchenbach, the defendant was given concurrent sentences for burglary, unauthorized use of property, and operating a vehicle after revocation of his license, and those sentences were to be served consecutively with sentences imposed for passing a road block, and eluding an officer. Id. at 1286. Noting that consecutive sentences are reviewed for abuse of discretion, we rejected Winchenbach's argument that his consecutive sentences were prohibited by section 1256(3)(B), and affirmed the sentences. Although Winchenbach's criminal acts were closely related in time, we concluded

that the sentencing court was free to find that they involved "different motivations." Id. at 1287.

In this case, the sentencing court was not compelled to find that the only purpose of Horr's theft of the vehicle was to facilitate his violation of the habitual offender law, and the statutes prohibiting OUI and driving to endanger. Id., see Pineo, 2002 ME 93, ¶ 13, 798 A.2d at 1098-99 (noting unintentional crimes have no criminal purpose).

State v. Horr, 2003 ME 110, ¶¶ 8-18, 831 A.2d 407, 410 -413 (footnotes omitted).

The contour's of Horr's Apprendi/Blakely argument in the above referenced pleadings to the state court was not crystalline in terms of identifying the question on which the Supreme Court granted cert in Oregon v. Ice.  However, his argument was sufficient to flag the issue for the state courts.

However, with respect to any ineffective assistance claim for not raising an Apprendi challenge to the consecutive sentences, in State v. Keen the Maine Law Court stated:

The question before us is this: Is a defendant's Sixth Amendment right to trial by jury, as articulated by the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, violated by the imposition of consecutive sentences for separate crimes, resulting from judicial rather than jury fact-finding? We conclude that no constitutional violation occurs as long as the sentence for each individual crime does not exceed the statutory maximum imposed by the Legislature for that crime, even when the aggregate sentence exceeds the maximum sentence for any single crime.

2007 ME 84, ¶ 1, 927 A.2d 398, 400; but see id. ¶¶ 30-36, 927 A.2d at 408-10 (Calkins, J., dissenting); see also Saccoccia v. United States, Nos. 99-2310, 99-2341, 02-1556, 2002 WL 1734169, 4 (1st Cir. July 29, 2002). Thus, even had counsel pressed the challenge we now know that it would not have been ultimately successful in the Maine courts.  See cf. United States v. Davies, 394 F.3d 182, 190-91 (3d Cir. 2005) ("[C]ounsel, however, had no duty to predict that the arguments in Jones [v. United States, 529 U.S.

17

848, 857(2000)] would become the law of the land."). With regards to any straight-up <u>Ice</u>

premised challenge in this forum, <u>Schriro v. Summerlin</u>, 542 U.S. 348 (2004) --

addressing the retroactivity of <u>Ring v. Arizona</u>, 536 U.S. 584 (2002) a case expanding

<u>Apprendi</u> principles to the context of capital sentencing determination -- is instructive.

<u>Summerlin</u> was in a similar posture to Horr's in that <u>Ring</u> issued while Summerlin's

habeas action was pending in the Ninth Circuit. The majority held:

> The right to jury trial is fundamental to our system of criminal
> procedure, and States are bound to enforce the Sixth Amendment's
> guarantees as we interpret them. But it does not follow that, when a
> criminal defendant has had a full trial and one round of appeals in which
> the State faithfully applied the Constitution as we understood it at the
> time, he may nevertheless continue to litigate his claims indefinitely in
> hopes that we will one day have a change of heart. <u>Ring</u> announced a new
> procedural rule that does not apply retroactively to cases already final on
> direct review. The contrary judgment of the Ninth Circuit is reversed, and
> the case is remanded for further proceedings consistent with this opinion.

542 U.S. at 358.  <u>See</u> <u>Sepulveda v. United States</u>, 330 F.3d 55, 61 (1st Cir. 2003)

(<u>Apprendi</u>); <u>Cirilo-Munoz v. United States</u>, 404 F.3d 527 (2005) (<u>United States v.</u>

<u>Booker</u>, 543 U.S. 220 (2005)).  So, even if this proceeding were stayed to ascertain the

outcome of <u>Ice</u>, it would be of no use to Horr.

**4**.      ***Failure to Raise Appellate Arguments***

Horr challenges his appellate counsel's performance in his fourth  28 U.S.C.

§ 2254 ground, arguing that she failed to raise a claim about the allowance into evidence

of prejudicial information about Horr's career offender status.  He also faults counsel for

not arguing that it was error to allow his prior record, including State Exhibit 1, to be

presented to the jury.  (Sec. 2255 Brief at 41-43.)  Horr further asserts that appellate

counsel should have made a disparate sentencing argument.  (<u>Id.</u> at 42-44.)

As to appellate counsel's performance, the post-conviction court ruled:

Allegations that appellate counsel was ineffective are equally insufficient. On appeal counsel focused on what she perceived to be the major issues: [] submission of the criminal record documents to the jury and imposition of consecutive sentences for conduct arising out of the same course of conduct. The Law Court considered and rejected these arguments. Any other issues that the petitioner alleges should have been raised would have distracted attention from the primary issues and would have also been unsuccessful.

(Nov. 29, 2005, Dec. at 5.)

Once again, these conclusions of fact concerning appellate counsel's strategic choices are presumptively correct and this court must defer to these factual findings. See Sleeper, 510 F.3d at 38; Norton, 351 F.3d at 6. The post-conviction court did not apply the Strickland "principles to the facts of the case in an objectively unreasonable manner." L'Abbe, 311 F.3d at 96.

**5**.     ***Right to a New Trial***

In his fifth ground Horr faults the state courts and his trial and appellate attorneys for his inability to get a new trial. (Sec. 2254 Br. at 45.) He asserts that he had exculpatory and prima facie evidence that could potentially exonerate him. (Id. at 45-46.) Horr explains that he made a timely motion for a new trial and the court postponed a hearing to allow for appointment of counsel and this postponement lasted four years without counsel being appointed. (Id. at 47.) Eventually the court dismissed the motion without allowing Horr to present his exculpatory evidence. (Id.) He indicates that he presented this information to appellate counsel but Horr's newly discovered evidence has not been presented to the courts despite Horr's request for such an opportunity. (Id.) Horr cites to his brief on appeal to the Maine Law Court (Pet.'s Ex. 12A.) In that brief counsel points out that, because Horr was not appointed counsel while this motion was

pending, he was never given the opportunity to file a motion with affidavits and exhibits.

(Id. at 7.)  This brief does not identify what new evidence Horr had up his sleeve.

Indeed, the Superior Court's order on Horr's motion for a new trial does display a confusion about the motion it had before it, identified as having been filed on March 16, 2006, and a reference to a motion filed September 18, 2002:

>    The motion for a new trial was filed March 16, 2006, and refers to an earlier motion on September 18, 2002; however, there is no motion in the file for that date.
>    In a hand written notice to the clerk dated August 9, 2002, Horr makes reference to a new trial due to failure of trial counsel to pursue a certain defense, but the court does not consider that matter as a motion for a new trial.
>    The March 16, 2006, motion refers generally to newly discovered evidence, but makes no specific allegations.
>    Defendant's most recent filing is dated September 25, 2007, and requests a hearing on the 2002 motion.  It generally alleges "newly discovered evidence", and for the first time, cites unspecified "other critical factors" that "would have changed the outcome of the trial."

(See Oct. 29, 2007, Order at 1 n.1.; State App. A.)  With respect to the motion before it the court stated: "The defendant's motion was filed more than two years after the verdict and denial of his appeal.  The motion does not offer any information from which the court can determine whether the 'newly discovered evidence' would meet the Law Court's test."  (Id. at 2.)

In his counseled brief to the Maine Law Court appealing this order, the closest that Horr's attorney came to identifying the tangible basis for his new trial motion is the following paragraph:

>    Mr. Horr has essentially tracked down evidence that was not discovered by the private investigator, whether or not that evidence is sufficient to warrant a new trial cannot have been fairly decided by a trier of fact, because the evidence has never been presented to a trier of fact by Mr. Horr with the help of an attorney.

(Appellant Br. at 7, State App. E.)

As to this order, the Maine Law Court entered the following memorandum of

decision:

> Randall Horr appeals from a judgment entered in the Superior Court …
> denying his motion for a new trial. Contrary to Horr's contention, the trial
> court did not abuse its discretion in denying, without holding a hearing, his
> motion for a new trial based on newly discovered evidence where Horr
> failed to provide any description of the evidence or support for his claim
> in his motion. See State v. Reilly, 628 A.2d 129, 130 (Me. 1993) (stating
> that the decision to hold a hearing is within the discretion of the trial
> court); State v. Cookson, 2003 ME 136, ¶¶ 28-29, 837 A.2d 101, 110
> (stating that a motion for a new trial on the ground of newly discovered
> evidence is disfavored and describing what a petitioner must establish to
> warrant granting the motion).

(Mem Dec. at 1, State App. E; Pet.'s Ex. 12B.)

Horr's Exhibit 20 to his 28 U.S.C. § 2254 petition is a compilation of

correspondence and records that pertain to Danny Libby, the person Horr maintains was

actually driving on the night of his arrest. There is an April 25, 2006, letter to Horr from

the Cumberland County Sheriff's Office that indicates that Libby was picked up on July

7, 2004, for violating an order for protection and he was released on July 27, 2004. (Pet'r

App. 20 at 3; see also id. at 13.) There is an April 11, 2006, letter to Horr from the same

office indicating the Libby had been at the facility three times, twice in 2002 and once in

2004. (Id. at 4.) Horr also includes print outs of Cumberland County Sheriff's Office

offense information on Libby for an assault and attendant failure to appear. (Id. at 10-

11.) There is a report from the same office indicating that Libby was arrested on April

13, 2002, at 331 Warren Avenue in Portland, Maine and Horr has added a notation to

indicate that this arrest was only one mile from where Horr was arrested four months

later and that Horr was being held at the Cumberland County Jail at the same time as

Libby and that Horr's private investigator came to visit Horr but yet could not locate Libby.  (Id. at 12.)  Horr includes a Bureau of Motor Vehicle report for Libby, listing accidents, suspensions, revocations, and the like from September 27, 2004, through December 8, 2005.  (Id. at 14-15.) And then there is a letter to Horr from the Androscoggin Sheriff's Office listing its contact with Libby from July 4, 2004, through December 21, 2005.  (Id. at 16.)  Otherwise this appendix contains letters by Horr requesting records, letters to him indicating the responder had no records on Libby, and Google maps.

The State's position is that this is a purely state-law issue and not a cognizable 28 U.S.C. § 2254 ground as it does not raise a federal constitutional claim. It is true that the substance of Horr's argument for a new trial is his assertion that there is newly discovered evidence in support of his argument that Libby was driving.  This is not in and of itself a constitutional claim. And the Maine Law Court's resolution of the second motion turned on Horr's lack of showing of an entitlement to further inquiry.  See Phoenix v. Matesanz, 189 F.3d 20, 25 (1st Cir. 1999) ("Whether the state court decision here is or is not impervious to habeas review depends on whether it rests, expressly or inferentially, on a state-law procedural waiver (or some other state law consideration), or whether, instead, it involves the resolution of the merits of Phoenix's federal constitutional claim.").

There is a potential constitutional infirmity lurking here as Horr was apparently promised the appointment of counsel when he filed his initial timely new trial motion. There is a copy of a handwritten letter to the clerk seeking a new trial dated early August 2002.  (State App. A.)  In the record there is also a transcript of a hearing in the superior court on September 20, 2002, in which the motion for a new trial is discussed, along with

Horr's need for counsel.  (Sept. 20, 2002, Tr. at 1-13, State App. A.)  The matter was continued and the State indicated it would not object to an amendment of the motion for a new trial once Horr had an opportunity to consult with counsel.  (Id. at 12-13.)  Counsel was never appointed so the motion languished.

In Horr's counseled brief to the Maine Law Court Horr presented the history of his August 9, 2002, motion for a new trial, pointing out that the March 16, 2006, pleading was not framed as a new motion but was entitled, "Motion For A Hearing on Correction Of Sentence and Motion For A New Trial."  (Appellant Br. at 3-5, State App. E.)  He argued:

> In light of the fact that on September 20, 2002 the Court treated Mr. Horr's motion as a motion for a new trial, it is unfair to say in 2007 that the filing was not considered a motion.  In addition Mr. Horr was unable to schedule the hearing on the motion for a new trial and therefore his motion should not be denied based on the time limit issue.  The motion for a new trial was filed in September of 2002 and was denied on October 29, 2007 without a hearing and, again, without Mr. Horr ever receiving the benefit of counsel.
>
> Attorney Strike preserved the right of another attorney to amend Mr. Horr's pro se motion for a new trial.  Counsel was never appointed in order to do that.  Had counsel been appointed they may have amended the motion to allege newly discovered evidence.  Mr. Horr should not be prejudiced by the fact that counsel was not appointed within the time limits set out by the Maine Rules of Criminal Procedure, as this fact is clearly not a result of any action or inaction on his part.

(Id. at 5.)

So there is a constitutional question raised here about the denial of counsel by the state courts.  But, for there to be an opportunity for 28 U.S.C.§ 2254 relief, the contours of that constitutional right must be clearly established by a holding of the United States Supreme Court.  The United States Supreme Court explained in Carey v. Musladin:

> Under the Antiterrorism and Effective Death Penalty Act of 1996,
> 110 Stat. 1219:
>
> "(d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with
> respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim-
>> "(1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States." 28 U.S.C.
>> § 2254(d)(1).
> In Williams v. Taylor, 529 U.S. 362 (2000), we explained that "clearly
> established Federal law" in § 2254(d)(1) "refers to the holdings, as
> opposed to the dicta, of this Court's decisions as of the time of the relevant
> state-court decision." Id., at 412.

549 U.S. 70, __, 127 S. Ct. 649, 652-53 (2006) (emphasis added).  Accordingly for there

to be a viable 28 U.S.C. § 2254 claim there must be a holding by the United States

Supreme Court that the Maine Law Court's resolution contravened within the meaning of

the 28 U.S.C. § 2254(d)(1) contrary to or unreasonable application inquiries.

To date there is no such precedent.  Of course Strickland cuts a pretty wide swath

in terms of being clearly established law for purpose of ineffective assistance of counsel

claims.   However, Horr's predicament apropos the new trial motion was that he was

essentially denied any assistance of counsel when the state courts failed to follow through

with the appointment of counsel promised in the September 2002 hearing.  So the

question is, is there a United States Supreme Court holding that controls this situation.

Some bellwethers for purposes of this inquiry are Powell v. Alabama, 287 U.S. 45

(1932), Gideon v. Wainwright, 372 U.S. 335 (1963), and United States v. Cronic, 466

U.S. 648, 659 (1984).

The Eleventh Circuit addressed a right to counsel claim vis-à-vis a motion for a

new trial under Georgia law in Williams v. Turpin, 87 F.3d 1204, 1209-10 (11th Cir.

24

1996).  The Panel held "that a criminal defendant has a constitutional right to effective representation by counsel at the motion for new trial stage of Georgia's Unified Appeal Procedure."  Id. at 1210.  The Court there recognized that the constitutional right to counsel attaches at critical stages of criminal prosecution, including trial and during the first appeal.  The right does not attach to collateral proceedings and the issue for the court centered on whether the statutory mechanism presented a critical stage of the criminal prosecution vis-à-vis the motion for a new trial or whether it was in the nature of a collateral proceeding.

Although appointment of counsel was anticipated in Horr's case, I could identify no Maine statute or case law that secures such a right for pre-direct appeal motions for new trials in every instance.  See Douglas v. California, 372 U.S. 353, 355 (1963) ("In Griffin v. Illinois, 351 U.S. 12, we held that a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. … Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal.  In either case the evil is the same: discrimination against the indigent. For there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has.' Griffin v. Illinois, supra, at p. 19.").  The record reflects that Horr was accorded counsel for his direct appeal in this case.

There is no United States Supreme Court case on point.[5]  There is some federal case law discussing claims pertaining to right to counsel in the context of a pre-appeal new trial motion.  The Seventh Circuit addressed the issue in perhaps the leading case on

---

[5]     See Herrera v. Collins, 506 U.S. 390, 417 (1993) ("Likewise, in reviewing petitioner's new evidence, we are mindful that defendants often abuse new trial motions 'as a method of delaying enforcement of just sentences.' United States v. Johnson, 327 U.S. 106, 112 (1946).").

point, <u>Kitchen v. United States</u>, 227 F.3d 1014, 1018-1019 (7th Cir. 2000), a 28 U.S.C. §

2255 proceeding, which concluded that a Rule 33 motion for a new trial filed prior to the

decision on direct appeal was not a "collateral attack" and Kitchen had a right to counsel

in prosecuting such a motion and in taking an appeal from its denial.  In the context of 28

U.S.C. § 2254 review, the Eighth Circuit troubled little over the question:

> Because a defendant is entitled to counsel under the Sixth
> Amendment in all such critical stages, <u>see</u> <u>Michigan v. Jackson</u>, 475 U.S.
> 625, 630-33 (1986), the district court correctly concluded that Robinson,
> who in no way waived his right to counsel, was denied his constitutional
> right to effective assistance of counsel when the state trial court informed
> him that he could file a <u>pro se</u> Rule 36.4 petition. Further, such actual
> denial of counsel is presumed prejudicial. <u>United States v. Cronic</u>, 466
> U.S. 648, 659 (1984). The fact that Robinson continued to be represented
> by trial counsel throughout the thirty-day period for filing a Rule 36.4
> motion is of no consequence. Robinson was entitled to separate counsel to
> pursue his ineffective assistance claim. <u>See</u> <u>Page v. United States</u>, 884
> F.2d 300, 301 (7th Cir.1989) (holding that counsel should not be expected
> to attack his own competence). Therefore, we hold that the district court
> did not err in concluding that Robinson's Sixth Amendment rights had
> been violated by the denial of separate counsel to pursue a Rule 36.4
> motion.

<u>Robinson v. Norris</u>, 60 F.3d 457, 460 (8th Cir. 1995).

On the other hand there is <u>Mayo v. Cockrell</u> from the Fifth Circuit which found

the going tougher:

> Mayo's argument begins with the proposition that criminal
> defendants are constitutionally entitled to effective assistance of counsel at
> every "critical stage" of prosecution and through the conclusion of direct
> appeal. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Evitts v.
> Lucey</u>, 469 U.S. 387, 396 (1985). A defendant whose attorney provides no
> meaningful assistance may, however, be constructively denied the
> assistance of counsel. <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).
> In Mayo's view, his lawyer's failure to research or file a motion for new
> trial was the equivalent of denying him counsel for the purpose of
> challenging Ms. Barnes's qualifications as a juror.
> The initial problem with this argument is that, from the standpoint
> of AEDPA, its conclusion does not necessarily follow from its premises.
> Few precedents exist explaining whether the period for filing a motion for

new trial is a "critical stage" of prosecution to which the right to counsel attaches. The Texas Court of Criminal Appeals, for instance, expressly withheld ruling on that issue, although lower Texas courts have described the post-trial period as "critical." ...Several federal courts of appeals have held that there is no constitutional right to counsel for post-appeal motions for new trial. United States v. Tajeddini, 945 F.2d 458, 470 (1st Cir.1991), abrogated on other grounds by Roe v. Flores-Ortega, 528 U.S. 470 (2000); United States v. Lee, 513 F.2d 423, 424 (D.C.Cir.1975); United States v. Birrell, 482 F.2d 890, 892 (2d Cir.1973). But three federal courts of appeals have held, on particular facts, that the motion for new trial phase is a critical stage of the prosecution. Kitchen v. United States, 227 F.3d 1014, 1018-19 (7th Cir.2000); Robinson v. Norris, 60 F.3d 457, 459-60 (8th Cir.1995); Menefield v. Borg, 881 F.2d 696, 699 (9th Cir.1989). The district court here seized on the absence of "clearly established Federal law, as determined by the Supreme Court ....," and concluded that the period for filing a motion for new trial is not clearly a critical phase; hence, the state courts did not unreasonably reject Mayo's habeas claim.

Unfortunately for Mayo, his position succeeds only if the right to counsel clearly and fully attaches to the post-trial, pre-appeal phase of prosecution. But it is unnecessary, in resolving this appeal, to render such a broad decision. Instead, we focus on the state court finding that Mayo was not denied counsel during the post-trial phase. This finding is not legally or factually unreasonable. Under Texas law, Mewis was bound to represent Mayo until the trial court permitted him to withdraw or appointed a new attorney. That Mewis was unaware of his legal responsibility does not transform an error into the "denial" or "absence" of counsel. Mewis in fact represented his client post-trial by taking steps to ensure the appointment of appellate counsel.

287 F.3d 336, 338 -340 (5th Cir. 2002) (footnotes and some internal citations omitted).

The Mayo dissent indicated: "While the Supreme Court has not considered precisely this issue, *every* federal circuit court to address the question has concluded that the post-trial, pre-appeal time period for filing a motion for new trial is a critical stage. Id. at 244 (DeMoss, J., dissenting) (citing Kitchen, Williams, Robinson, and Menefield v. Borg, 881 F.2d 696, 699 (9th Cir.1989)).  It noted that it could find no cases "holding that the post-trial, pre-appeal time period for filing a motion for new trial is not a critical stage." Id. at 344 n.4.

27

Since these decisions the Supreme Court issued <u>Carey v. Musladin</u> and under the precepts of that case this court is constrained by the fact that there is no holding of the United States Supreme Court clearly establishing a right to counsel for a motion for new trial in a state which does not have a law requiring appointment of counsel in the context of pre-appeal motions for new trial. In sum, although Horr may have an argument that his constitutional right to counsel was infringed by the state courts in 2002 when counsel was not appointed on the motion for a new trial, he does not have a tenable 28 U.S.C. § 2254 claim given the limitations of § 2254(d)(1) review.

I add that Horr's showing with respect to his newly discovered evidence, years after he would have had to generate this "new evidence" to succeed with his 2002 motion for a new trial, is makeweight. For instance, he is relying heavily on the behavior of Libby well after the night in question and this is not really probative of the question of whether or not Libby and not Horr was operating the vehicle. There is nothing in Horr's presentation to this court that suggest that had Horr been appointed counsel his attorney could have generated anything near an adequate showing to justify a new trial on the basis of newly discovered evidence. And this is not a case in which there was an obvious deficiency in Horr's trial – such as the inattention of counsel to the fundamentals of the case or prosecutorial misconduct – that would have presented a real prospect of relief from the jury verdict if Horr had been assisted by an attorney vis-à-vis his motion for a new trial.

**6.      *Crediting of Pre-trial Detention Time***

Horr's sixth and final 28 U.S.C. § 2254 contention is that his pre-trial detention time should have been credited as to each of his consecutive sentences. (Sec. 2254 Br. at

28

48 -49.)   He represents that he sought credit for 259 days of this detention from the

courts, the county jail, and the Maine Department of Corrections.  (Id. at 49.)  He relates

that there was no way for him to know that he would not receive this credit until after he

started serving his sentence.  (Id. at 49 -50)   Horr identifies the Equal Protection clause

as the source of his right to this deduction on his consecutive sentences relative to

inmates who are sentenced to concurrent terms.  (Id. at 50-51.)

In its decision on Horr's second petition for post-conviction review the Superior

Court reasoned:

> Petitioner filed this, his second petition for post-conviction review[,] on July 18, 2007.  Petitioner's single allegation pertains to pre-trial detention time.  Petitioner asks that "the 259 pre-trial detention time …be deducted off each sentence for which [he] was held prior to verdict and sentence."  Detention credit challenges are proper for post-conviction review.  See State v. Phillip, 654 A.2d 432, 433 (Me. 1995).  Despite raising a proper ground for review, Petitioner's second petition should be dismissed because issues of detention credit could have been raised in Petitioner's first petition.  15 M.R.S.A. § 2128(3), *Waiver of grounds not raised*, states "all grounds of relief from a criminal judgment … shall be raised in a single post-conviction review action and any grounds not raised are waived unless the State or Federal Constitution otherwise require or unless the court determines that the ground could not reasonably have been raised in an earlier action."  The detention time to which Petitioner now alleges he is entitled could have reasonably been raised in his first petition.  Additionally, Petitioner's first petition was assigned, and an evidentiary hearing was conducted.  There has been sufficient time and opportunity to raise issues concerning pre-trial detention.
> Because Petitioner failed to raise the issue of pre-trial detention in his first petition, he is deemed to have waived this argument.
> Accordingly, his petition lacks a proper ground for review.

(Nov. 13, 2007, Order at 2-3, State App. F.)   Horr filed a motion to reconsider this

summary dismissal, also dubbed as a motion for appeal.  According to the state court

docket his motion was denied on January 23, 2008.  In his memorandum seeking review

by the Maine Law Court, Horr argued that he could not have known that he would not

have received a deduction on his second consecutive term until after his first post-conviction petition.  On May 8, 2008, the Maine Law Court denied a certificate of probable cause, stating that his argument was without merit.  (May 8, 2008, Order at 1, State App. F.)

     As with the fifth ground, the State's position is that this is a purely state-law issue and not a cognizable 28 U.S.C. § 2254 ground as it does not raise a federal constitutional claim.  Horr did not raise this as a constitutional claim in his effort to get the Maine Law Court to review the denial of his second post-conviction petition.  (See Appellant's Mem. Certificate Probable Cause at 1-4, State App. G.)[6]  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) and O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also id. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' "); Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) ("It is, however, clearly inadequate to simply recite the facts underlying a state claim, where those facts might support either a federal or state claim.")(citing Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).  Accordingly, to the extent that Horr envisions this as a constitutional

---

[6]     In his pro se form petition Horr did assert that counsel was ineffective for not raising this claim but the argument in his memorandum to the Maine Law Court was that the basis for this claim could not have been known even by the time Horr filed his first post-conviction petition.

claim, Horr is not entitled to 28 U.S.C. § 2254 review as he did not frame it as a constitutional claim in the state courts.

## Conclusion

Based upon the foregoing, I recommend that the State's motion to dismiss be granted and the petition denied.   I further recommend that a certificate of appealability should not issue in the event Horr files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed without ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 4, 2008